**Opinion issued July 10, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00912-CV

————————————

**ROBERT EARL WADE JR., Appellant**

**V.**

**CAROLYN LOUISE WADE, Appellee**

---

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Court Case No. 11-02-01608 CV**

---

## MEMORANDUM OPINION

This appeal concerns the division of property between divorcing spouses. In three issues, Robert Wade complains that the trial court erred by (1) awarding to Carolyn Wade a disproportionate share of the marital estate, (2) failing to award to

him his separate property, and (3) reopening evidence in violation of Rule 21 of the Texas Rules of Civil Procedure.

We affirm.

## Background

Carolyn Wade filed for divorce from Robert Wade after 19 years of marriage. The couple had no minor children; their dispute concerned the division of property only. When the parties could not agree on a division, the trial court held a one-day bench trial on the property issue. The majority of the testimony from Robert and Carolyn focused on the values of their home and family-run business.

Robert testified that the home had a value of $120,000 and offered as evidence an appraisal he obtained that was consistent with that valuation. Carolyn suggested that the house was worth between $150,000 and $180,000 but acknowledged she had a separate appraisal done on the property that resulted in an appraisal of $136,000. Both parties agreed that Carolyn was owed a credit of $30,000 for the down payment she paid from her separate property in 1996. They further agreed that the party who was not given the right to possess the property should receive one-half of the equity in the home when the marital assets were divided by the trial court, but they could not agree on the dollar amount that would result from that division. Robert indicated at one point that, if he were given

2

possession, Carolyn should receive $72,000, but he later testified that she should receive only $36,500.

Carolyn requested that she be granted possession of the home but also indicated that she was willing to accept a money judgment equal to her one-half interest instead. Robert, on the other hand, was adamant that he wanted possession of the home.

Regarding their family-run business, Robert and Carolyn testified that they started the company in 1992, which they described as a small construction company that also did septic service excavation. Robert took the position that the company had no value outside of the value of the equipment they owned, which was listed separately on his inventory. Carolyn disputed that the company was worthless. According to Carolyn, the couple's business had a gross income of $220,000 in the year preceding the divorce—and had even higher revenues in previous years. Robert requested that he be given full ownership of the business in the division of community assets.

Both Robert and Carolyn also testified about a storage shed that had been on their residential property. Carolyn testified that, when she moved out, she took the portable shed with her to store her things. She said that it had only been used to store the couple's lawn mower and Christmas decorations before she moved it. Robert testified that the shed was a gift to him from his sister, making it his

separate property. Robert asked that he be awarded the building as his separate property. He placed a value on the shed of $5,400 but admitted that he and Carolyn had used community funds to make improvements to the building after it was given to him. Neither party testified to the amount of community funds invested in the structure.

At the conclusion of the one-day trial in May 2012, the trial court ordered that the couple be divorced but stated that it would need additional time to prepare an order dividing the property. Over the next several months, the trial court issued two orders. The first order granted Robert possession of the family home—which the court valued at $120,600—and provided that Carolyn would receive a reimbursement for her $30,000 separate property investment in the home and a lien in the amount of her one-half interest in the remaining value of the home. The second order divided some personal property between Robert and Carolyn. It granted to Carolyn a truck, a recreational vehicle, and "various furniture and fixtures" in her possession, while granting to Robert two trucks, a tractor, two trailers, and "various furniture and fixtures located at marital residence." The parties continued to disagree regarding the division of other personal property not addressed in the trial court's two orders. Accordingly, no final decree was entered.

After almost one year had passed since the one-day trial was held, and still without a final decree dividing the couple's property, Carolyn submitted a

4

proposed property division and requested that judgment be entered consistent with that proposal. Robert responded with a "Court Ordered Response and Objection to Petitioner's Property Division Outline" in which he asserted that he had already filed a proposed final decree to which Carolyn had not objected or otherwise responded.[1] Robert objected to Carolyn's suggested division, arguing that her division was "based upon values and property that were not put forth in evidence at trial." The following month, in June 2013, Carolyn moved for entry of a final decree and requested a hearing and entry of judgment consistent with her proposed property division.

A hearing was held on Carolyn's motion in July 2013. At that hearing, the trial court specifically stated that it was not going to re-open the evidence, yet the court swore in Carolyn and Robert and asked them questions about the location and value of various personal property items still in dispute. Some of these items— like the tools used in connection with the couple's septic business—had been discussed at the earlier, one-day trial, while others—like lampshades that remained in the home awarded to Robert—had not. Both parties indicated that they were requesting an off-set for the difference in value of these personal property items. Nonetheless, Robert objected to the off-set procedure, contending that the values discussed at the hearing were inconsistent with the trial testimony.

---

[1]    Robert's proposed decree is not in the appellate record.

5

The trial court issued a final decree the same day as the hearing but did not make separate findings of fact or conclusions of law. Robert refused to sign the decree. It is the division of property contained in that decree that Robert appeals.

**Evidence to Support the Trial Court's Property Division**

In his first issue, Robert complains that the evidence is insufficient to support the trial court's division of the marital estate.

## A.    Standard of review

When dividing property between divorcing spouses, the trial court is required to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001 (West 2008); *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex. 1981); *Leax v. Leax,* 305 S.W.3d 22, 33–34 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The trial court has broad discretion in making a "just and right" division of the community estate, and its discretion will not be disturbed on appeal absent a clear abuse of discretion. *Leax,* 305 S.W.3d at 34; *see also Chafino v. Chafino,* 228 S.W.3d 467, 472 (Tex. App.—El Paso 2007, no pet.) ("It is the reviewing court's duty to presume that the trial court properly exercised its discretion in dividing the estate."). A trial court abuses its discretion in making the property division if it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. *Evans v. Evans,* 14 S.W.3d

343, 346 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990)).

We must determine whether (1) the trial court had sufficient information upon which to exercise its discretion and (2) the trial court abused its discretion by dividing the property in a manner that is manifestly unjust or unfair. *Id.* A trial court does not abuse its discretion when some evidence of a probative and substantive character exists to support the division. *Newberry v. Bohn-Newberry,* 146 S.W.3d 233, 237 (Tex. App.—Houston [14th Dist.] 2004, no pet.). When, as here, no separate findings of fact or conclusions of law are requested by the appealing party or made by the trial court, we must draw every reasonable inference supported by the record in favor of the trial court's ruling. *Worford*, 801 S.W.2d at 109.

If the evidence demonstrates a reasonable basis for doing so, a trial court may order an unequal division of the community property. *Murff,* 615 S.W.2d at 698–99 & n.1. In *Murff*, the Court identified factors to consider when dividing marital property, including the nature of the marital property; the relative earning capacity and business experience of the spouses; their relative financial condition and obligations; their education; the size of separate estates; the age, health, and physical conditions of the parties; fault in breaking up the marriage; the benefit the innocent spouse would have received had the marriage continued; and the probable

need for future support. *Id.* at 699–700. We presume that the trial court exercised its discretion properly in applying these factors. *Id.* ("The trial court in a divorce case has the opportunity to observe the parties on the witness stand, determine their credibility, evaluate their needs and potentials, both social and economic. . . . [The trial court's] discretion should only be disturbed in the case of clear abuse.").

**B.      The trial court did not err in dividing the community estate**

Robert contends that the marital property was unevenly divided and that there was insufficient evidence to support that unequal division, given that only he provided evidence of the value of the marital assets. Robert specifically complains that the trial court awarded Carolyn "one-half of the value of the assets, but not one-half of the debt." The debt that Robert complains of is a "business loan" in the amount of $8,750 incurred during the pendency of the divorce.

Because Robert did not request findings of fact from the trial court, he cannot establish whether the trial court intended its division to be near-equal or if, instead, it determined that the evidence supported a disproportionate division in favor of Carolyn. *Tate v. Tate*, 55 S.W.3d 1, 10 (Tex. App.—El Paso, 2000, no pet.) (noting that without findings of fact, it is uncertain whether division was intended to be equal or disproportionate). Nor can he establish what factors the trial court might have found to warrant an uneven distribution, if one was intended. *See id.* In this context, we must presume that the trial court properly exercised its

8

discretion in applying the *Murff* factors and will uphold an unequal distribution if the circumstances demonstrate a reasonable basis for such an award. *Murff,* 615 S.W.2d at 699–700; *Leax,* 305 S.W.3d at 34. We turn now to the division of assets ordered by the trial court.

At Robert's request, he was granted possession of the family home. Carolyn was awarded a credit of $30,000, which was the amount of Carolyn's separate property the parties agreed had been used as a down payment on the home.[2] The court valued the home at $120,600, based on the appraisal by Robert's expert. The court divided the equity in the home equally between Robert and Carolyn based on that value.

Robert had valued the family business at zero, which Carolyn disputed. She testified that the business had been profitable in the past and suggested that she should share in the financial benefit of that success. Robert argued that the value in the business was limited to the value of the tools and equipment he used to excavate septic systems and perform other construction work. As part of the division of the marital estate, the trial court granted to Robert the business, nearly all of the equipment, trailers, and tools used in connection with the business, as

---

[2] A down-payment of $30,000 has been made on the home with Carolyn's separate property in 1996. There is no indication that the trial court adjusted Carolyn's reimbursement to take into account the time value of money in making a "just and right" division. TEX. FAM. CODE ANN. § 7.01 (West 2008).

well as the $8,750 business debt; Carolyn was given a credit of $11,636 based on the value of the property granted to Robert.

Thus, the two main items that were in dispute during the trial were divided nearly equal: the parties split the equity in their home evenly and the court awarded Carolyn an $11,636 credit based on the difference in value of the remaining property divided between them. Even using the values Robert assigned to the family business and the other property in his submitted inventory and appraisal, we conclude that the $11,636 credit did not result in a clear abuse of discretion.[3] *See Murff*, 615 S.W.2d at 700 ("Mathematical precision in dividing property in a divorce is usually not possible. Wide latitude and discretion rests in these trial courts and that discretion should only be disturbed in the case of clear abuse."). To the extent the property division could be considered an unequal division, we conclude that the record supports such an award. *See Murff*, 615 S.W.2d at 699 (holding that "consideration of a disparity in earning capacities or of incomes is

---

[3]    Robert was granted a tractor, boat, two trucks, two trailers, tools, and equipment that he valued at $19,050 total, based on his contention that he owed as much on his truck as it was worth. Carolyn received a much older truck, a "4-wheeler," and a trailer and storage building which, according to Robert's calculations, equaled $14,600 total. Using Robert's suggested valuations, the difference between what was granted to him and to Carolyn was $4,450—less than half of the $11,636 Carolyn was provided as an off-set. Using Carolyn's suggested valuations, however, Robert was awarded assets worth more than $27,000 more than Carolyn, causing the $11,636 off-set to be less than half the amount it should have been. Each party was also given possession of additional personal property items specifically listed in the decree but to which no values had been assigned as well as all remaining personal property items already in each party's possession.

proper" and that such disparity in income or business opportunities can support an uneven division).

One of the factors the trial court may consider in granting an unequal division of property is the parties' comparative incomes and business opportunities. *See Murff,* 615 S.W.2d at 699–700. Carolyn's employment at the time that the property was divided provided her an annual salary of $24,000. Robert's income came from the couple's construction company, which had a history of earning a gross income of $200,000 per year or more. Carolyn was denied any ownership interest in that family business, which she and Robert had grown during their marriage. Carolyn also was denied the right to occupy the family home; it was awarded to Robert. Considering that Robert was awarded the business and possession of the home and taking into account the disparity in income and business opportunity between Robert and Carolyn, we cannot conclude that the award of slightly more community assets to Carolyn was unfair or unreasonable based on this record. Because we do not conclude that the community estate was divided in a manner that was manifestly unfair to Robert, we overrule his first issue.

### Separate Property Claim

In his second issue, Robert contends that the trial court erred by failing to award to him a portable shed he alleges was his separate property.

## A.    Separate property defined and standard of review

A spouse's separate property is defined by statute as the property "owned or claimed by the spouse before marriage" or "acquired by the spouse during marriage by gift, devise, or descent," as well as any "recovery for personal injuries" sustained during the marriage, with limitations. TEX. FAM. CODE ANN. § 3.001 (West 2008). Community property is all property that was acquired by either spouse during the marriage that is not separate property. TEX. FAM. CODE ANN. § 3.002 (West 2008).

There is a statutory presumption that all property possessed by either spouse during or at dissolution of the marriage is community property. TEX. FAM. CODE ANN. § 3.003(a) (West 2008). To overcome the presumption that property is community property, the spouse seeking to have the property categorized as separate property must establish that fact through "clear and convincing evidence." TEX. FAM. CODE ANN. § 3.003(b) (West 2008). A party can establish the separate character of property by clearly identifying the property and tracing it back to the time and means by which the spouse originally obtained possession of the property. *Estate of Hanau v. Hanau*, 730 S.W.2d 663, 667 (Tex. 1987). If the evidence shows that property sought to be labeled as separate property has been commingled with community property "so as to defy segregation and identification," the burden is not met and the statutory presumption of community

12

property will prevail. *Id.* Thus, improvements made to separate property using community funds can cause what was initially separate property to lose its character and become community property. *Id.* (citing *Lantham v. Allison*, 560 S.W.2d 481, 484–85 (Tex. App.—Fort Worth 1978, writ ref'd n.r.e.)).

Mischaracterizing separate property as community property is an error that may require reversal. *See Pearson v. Fillingim*, 332 S.W.3d 361, 363–64 (Tex. 2011) ("Certainly, a court cannot divest an owner of separate property."); *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139–41 (Tex. 1977). However, reversal is not always required. For example, a trial court does not err in characterizing separate property as community property if the party who had the burden to establish the separate nature fails to present adequate evidence to meet that burden. *See Pearson*, 332 S.W.3d at 354 (stating that such mischaracterization would not be error because "a court has jurisdiction to characterize community property—even if it does so incorrectly." (quoting *Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003))).

Even if the spouse who is arguing that property is separate property does satisfy the evidentiary burden, a mischaracterization of separate property as community property will not require reversal if the mischaracterization had only a de minimus effect on the overall division of the estate. *See Robles v. Robles*, 965 S.W.2d 605, 621–22 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). It is only

when the court mistakenly characterizes property that is of such magnitude that it materially affects the just and right division of the community estate that reversible error is demonstrated. *See id.*; *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 608 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding that reversal is unwarranted unless uneven division is "manifestly unjust and unfair"); *see also Humphrey v. Humphrey*, 593 S.W.2d 824, 828 (Tex. App.—Houston [14th Dist.] 1980, writ dism'd) (concluding that, when property division was equitable, mistake by trial court characterizing community property as separate property "was harmless and does not require reversal").

When, as here, the appellant did not request findings of fact and conclusions of law, we must affirm the judgment if it can be supported on any theory presented by the record, viewing the evidence in the light most favorable to the appellee—in this case, Carolyn. *Goodyear Tire & Rubber Co. v. Jefferson Constr. Co.,* 565 S.W.2d 916, 918–19 (Tex. 1978); *Patt v. Patt*, 689 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1985, no writ).

We consider, then, whether the trial court mischaracterized the shed as community property and, if so, whether such error requires a reversal of the property division.

**B.     Mischaracterization, if it occurred, had only a de minimus effect**

Robert's inventory and appraisal, which he submitted pre-trial, assigned a value to the portable shed of $5,600. According to the trial testimony, this was a 12 foot by 16 foot storage building that the couple used to store a lawn mower and some Christmas decorations. Carolyn testified that she took the portable building with her when she moved out so she could store her belongings. Robert countered that the shed had been a gift to him from his sister, which made it his separate property. Robert also testified that he and Carolyn used community funds to make improvements on the structure, though he did not indicate the amount of community funds they invested in the shed.

Robert's post-trial filings, in which he disputed Carolyn's proposed property division, never mentioned the shed specifically. Neither did the divorce decree specifically mention the shed or explicitly award it to one of the parties. Instead, it appears that the shed was awarded to Carolyn through a general provision in the decree granting to each party all personal property, fixtures, furnishings, and equipment currently in their possession.

Even assuming that the trial court ruled that the shed was community property and erred in granting it to Carolyn, we conclude that such error had, at most, a de minimus impact on the property division given the relatively small value of the structure and the fact that community assets were used to improve the

15

structure to its stated value. *See Vickery v. Vickery*, 999 S.W.2d 342, 371–72 (Tex. 1999) (concluding that mischaracterization of property did not result in unjust division, given community reimbursement claim that would have existed had property been correctly characterized as separate property); *Tate v. Tate*, 55 S.W.3d 1, 11–12 (Tex. App.—El Paso 2000, no pet.) ("It is only when the court mistakenly characterizes property that is of such magnitude that it materially affects the just and right division of the community estate that reversible error is demonstrated.").

Accordingly, given the de minimus effect mischaracterization of this shed would have had on the property division, we conclude that any error by the trial court in its award of the shed to Carolyn did not result in a manifestly unfair or unjust division or in an abuse of the trial court's discretion.

We, therefore, overrule Robert's second issue.

**Re-Opening Evidence**

In his third issue, Robert complains that the "trial court erred and abused its discretion in its division of the parties' marital assets by reopening the evidence at a hearing without notice and . . . in violation of Rule 21 of the Rules of Civil Procedure."

16

## A. Standard of review

In a bench trial, a trial court may permit additional evidence to be offered "at any time" when it "clearly appears to be necessary to the due administration of justice . . . ." TEX. R. CIV. P. 270; *Moore v. Jet Stream Invs., Ltd.*, 315 S.W.3d 195, 201 (Tex. App.—Texarkana 2010, pet. denied). The standard of review applicable to evidentiary rulings is abuse of discretion. *Harris Cnty. v. Inter Nos, Ltd.*, 199 S.W.3d 363, 367 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Similarly, a ruling to allow or disallow additional evidence after the parties have closed is reviewed under the abuse-of-discretion standard. *Naguib v. Naguib*, 137 S.W.3d 367, 372 (Tex. App.—Dallas 2004, pet. denied); *Moore*, 315 S.W.3d at 201. The test for abuse of discretion is whether the trial court acted without reference to guiding rules and principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

## B. Notice argument not supported by law

First, we note what Robert's contentions on appeal do not involve. Robert does not complain that he was provided inadequate notice that there would be a hearing on July 1. Notice was given that Carolyn would present a motion for entry of judgment that day. Further, Robert does not contend that the trial court was prohibited from receiving new evidence. As Robert explains, "The complaint . . . is

17

not that the evidence was reopened, but that [Carolyn] did not give notice and the opportunity for [Robert] to prepare for [a] hearing" involving new evidence.

Second, we point out that neither party examined or cross-examined Robert or Carolyn at the July 1 hearing. Instead, the trial court, as the trier-of-fact in this non-jury divorce case, asked questions of the parties regarding the location and value of the personal property items in dispute. To the extent Robert was unprepared for this procedure, he failed to request a continuance of the hearing to gather and offer additional evidence. Further, Robert did not contend that the items discussed had not been adequately disclosed in discovery.

Third, we note that Robert has not cited any authority to support his contention that the three-days'-notice requirement found in Rule 21 applies to the re-opening of evidence in a bench trial. *See* TEX. R. APP. P. 38.1(i) (requiring appellate brief to include appropriate citations to authorities and to the record); TEX. R. CIV. P. 21. We find no authority to support those contentions either. Instead, the wording of Rule 270 and the related case law support a contrary view.

Rule 270 provides that a trial court may admit additional evidence "at any time" when necessary to the due administration of justice. TEX. R. CIV. P. 270. In deciding whether to exercise its discretion and reopen the evidence, the court may consider a number of factors, including (1) the diligence of a party in presenting its evidence, (2) whether reopening the record will cause undue delay, (3) whether

granting the motion to reopen the evidence "will cause an injustice," and (4) whether the evidence to be introduced is decisive. *See In re A.F.,* 895 S.W.2d 481, 484 (Tex. App.—Austin 1995, no writ). The trial court should exercise its discretion liberally "in the interest of permitting both sides to fully develop the case in the interest of justice." *In re Hawk*, 5 S.W.3d 874, 877 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Word of Faith World Outreach Ctr. Church, Inc. v. Oechsner*, 669 S.W.2d 364, 366–67 (Tex. App.—Dallas 1984, no writ).

Our review of the cases involving the appeal of a trial court's ruling on a Rule 270 motion indicates that such motions are often urged in the course of the trial. *See, e.g.*, *In re A.F.*, 895 S.W.2d at 484 (holding that trial court did not abuse discretion by granting State's motion to re-open evidence after State rested but before case was given to jury). Such a scenario hardly allows for three days' notice of the request to re-open evidence. Instead, the rule permitting a trial court to re-open evidence "at any time" suggests that it is a mechanism afforded to the trial court to provide an *immediate* remedy to parties who perceive a need to introduce an additional evidentiary item after the evidence has closed. TEX. R. CIV. P. 270. This is inconsistent with Robert's interpretation that would impose a requirement of three days' notice of a request to re-open the evidence.

Finally, because we already have concluded that the division of property was not manifestly unfair or unjust to Robert, we also conclude that Robert is unable to

19

demonstrate that he was harmed by the procedure used by the trial court at the July 1 hearing to finalize valuations for disputed property. *See Sias-Chinn v. Chinn*, No. 03-11-00128-CV, 2012 WL 677496, at *3 (Tex. App.—Austin Feb. 29, 2012, no pet.) (mem. op.) (holding that wife could not demonstrate harm because division was not manifestly unjust); *see also Bullock v. Bullock*, No. 01-86-00051-CV, 1987 WL 17053, at *3 (Tex. App.—Houston [1st Dist.] Sept. 17, 1987) (mem. op., not designated for publication) (holding that incorrect valuations did not require reversal absent demonstration that those incorrect values led to manifestly unjust division of community property).

Because any slight adjustments in value that the trial court might have considered after questioning Robert and Carolyn at the July 1 hearing did not result in a manifestly unjust division of property, Robert cannot establish harm based on his contention that he had inadequate notice to prepare for the hearing. Even if the trial court erred by questioning Robert and Carolyn about their property at the July 1 hearing, without harm, Robert cannot obtain a reversal of the division of property. Accordingly, we overrule Robert's third issue.

## Conclusion

Having overruled all three of Robert's issues, we affirm the judgment of the trial court.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.