HARRIETT BARNES *v.* JONATHAN WYETHE.

*Marriage annulled on account of fraud &c.*

A marriage annulled on the ground of fraud, where it appeared that the petitioner was imposed upon, and the marriage brought about by the authorities of the town, to which she was chargeable as a pauper, by their hiring the petitionee, whose settlement was in a different town, to consent to the form of a marriage without afterwards fulfilling or intending to fulfil its obligations, and with no other object except to impose upon the town of his settlement the expense of the petitioner's maintainance.

PETITION FOR A DECREE OF NULLITY of a marriage contract between the petitioner and petitionee. The facts upon which the petition was based, so far as they were sustained by the testimony,

sufficiently appear in the opinion of the court, which, after argument by

O. H. *Smith* for the petitoner; and by

*Peck & Colby* for the petitionee,

was delivered by

REDFIELD, CH. J. We are satisfied, in this case, that the form of marriage was brought about between these parties, chiefly through the instrumentality of certain inhabitants in Moretown, who had the charge of maintaining the town's poor, for the purpose of changing the settlement of the petitioner; and that, to effect this, they promised Wyethe $ 100, and paid him $ 60; that his purpose was not to contract, in good faith, a marriage, but to get money, and revenge an imaginary grievance against Middlesex, and abandon the petitioner, which he did in about three weeks. She is a cripple, feeble both in body and mind, and was wholly at the disposal of those who had her in charge. It is difficult to lay down any general rule in regard to the precise character of fraud which will render null a marriage contract. But we are reluctant to say, that such a transaction as the present, is to receive the countenance of the courts of the state. It would, we think, be of evil example. The transaction possesses no one feature of a marriage contract, but the ceremony. The cohabitation so long as it continued, seems to have been, on the part of the petitioner, the result of the general imposition; and, on the part of the defendant, a part of the attempted villany. A decree of nullity, if it have no other good effect, (and, as to the parties, it seems to be of no great importance, both being virtual paupers,) will deprive the conspirators of the wages of their iniquity, and be of good example to others. We are not satisfied there was any such duress in the case, as to justify a decree of nullity. But one of the chief actors testifies that he told the petitioner the laws were so altered that the town authority said they had a right to marry paupers to whom they saw fit; and the petitioner testifies that she believed it, and supposed that, if she refused to submit to the marriage, she should be left to starve. It is impossible to know how much such badinage might have influenced so simple a creature in the outset; but we are not satisfied she finally acted under the delusion, and still she might have done. Petition granted.