# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed February 8, 1923.

CHARLES R. MAYKRANTZ
VS.
MADELINE L. MAYKRANTZ.

*Charles Jackson* for plaintiff.
No appearance for defendant.

STEIN, J.—

In this case the husband seeks to have annulled his marriage to the defendant because she never intended to consummate it by having sexual relations with him; which intention she had before marriage, concealed it until the marriage and has persisted in ever since, all of which constitutes such a fraud upon the husband as entitled him to have the marriage annulled.

The defendant, while summoned, did not either appear, answer or testify; a decree *pro confesso* was had against her. The only testimony produced before the examiner was that of the husband and his sister, consists of the defendant's admission to each of them, shows that because of her refusal to have sexual intercourse with him, the plaintiff left his wife on the night of the marriage, did not return for three months, then on December 3, 1920, again left her for the same reason and never went back, so that from June 28, 1920, the date of the marriage, until December 3, 1920, the plaintiff's wife did not and would not have sexual intercourse with him. This is shown by the 16th, 17th, 23rd and 24th questions and answers, which were as follows:

"16th Q. Did she (*i. e.*, the wife) at any time say to you that she never intended to have anything to do with you in the way of having sexual intercourse with you prior to her marriage, and that was her intention? A. Yes.

17th Q. That was her exact words or the substance of her language? A. The substance was that she did not care to have any children, that is what she told me, and she told me that that had been her intention prior to the marriage.

23rd Q. Did she in any way show that she had only gotten married in order to have somebody keep her? A. Yes, she told me that she married me for a husband, that is all, to have somebody to take care of her.

24th Q. To get somebody to take care of her? A. Yes, to get somebody to take care of her and support her."

The husband also testified he did not know of this intent of his wife until after the marriage.

The husband's sister's testimony, which corroborates his, is set out in great detail, and consists of the wife's admissions, out of the husband's presence. In answer to the 14th question the sister said:

"Q. Did you ask her what her intention had been at the time she was married, whether or not at the time she was married she intended to have sex-

ual intercourse with him? A. She (meaning the wife) said that she refused him, she admitted that. She told me the same thing, that he told you before; that he should go out and get it, if he could not do without it."

The Master, who filed a report recommending the decree under the testimony and the weight of authority, with his usual learning and ability, supports his finding by a very valuable citation of authorities, which after examination, can be explained either by the peculiar facts of the case cited, or by a policy, either forbidden by or offensive to that of the Maryland law.

In deciding divorce cases, *nisi prius* judges must bear in mind that in Fisher vs. Fisher, 95 Md. 314, 319, our Court of Appeals said:

"That the State has a peculiar interest in the maintenance of marriage ties. * * * In divorce cases the policy of the State demands that the marriage bond shall not be broken, except for sufficient and legal causes, specifically designated by statute. This policy is founded * * * also for the preservation of the public morality, which demands that the marriage tie shall not be served, except for such sufficient and legal causes as the statute specifically designates."

While this was a bill for annulment, not one for divorce, the above policy should determine the rule of law to be applied in this case. The record here presents two points, viz.:

"1. Is the concealed intent of a party to a marriage ceremony to have sexual relations with the other, followed up by a persistent refusal to such intercourse after the marriage, such a fraud as will entitle a court of equity to annul the marriage?

"2. If such is the rule can it be applied to the testimony in this case?"

Assuming for the argument, without holding, that the weight of authority supports the doctrine that a concealed intention of one party at the time of the marriage not to have sexual relations with the other, if followed, after marriage by persistent refusal to have such intercourse, is a fraud that will support a decree for annulment of the marriage, at the suit of the injured party, the proof of such intent must be of the very highest order, should not consist of admissions like those set out in the testimony in this case.

Although the defendant was summoned, she did not either appear or answer, but allowed a decree *pro confesso* to be passed against her, yet

"The Court can render the State a great service by a rigid scrutiny of the testimony produced in divorce cases, and by a denial of the divorce in all cases where the proof does not fully measure up to the requirements of the law." Twigg vs. Twigg, 107 Md. 676, 681.

From the neglect or refusal of the defendant to answer and testify, many inferences may be drawn against her. As was said in Harne vs. Harne, Daily Record, December 15th, 1922:

"This may, of course, have arisen from either one of two entirely different reasons; she may not have been willing to go on the stand and commit perjury, or she may have desired to see the divorce obtained and therefore evaded testifying. The latter, together with the uncertain evidence of the husband, would make a clear case of collusion, the purpose being to mislead the Court into granting a divorce, which it would not have done had all the facts been fully before it and the attempt of a husband and wife to impose upon the Court is of course fraudulent and form a sufficient ground for refusing the relief asked in the bill."

To grant a decree of annulment upon such testimony would greatly enlarge the grounds for destroying the marriage relationship, and open up another avenue to the collusion condemned in the above opinion. In addition, the testimony in support of the bill is entirely *ex parte*, was given in answer to grossly leading questions, has so very little probative force that it cannot support a decree when measured by the rules required to be applied in bills for divorce, *i. e.*, that the plaintiff's testimony should be corroborated, and that admissions of the parties alone are not sufficient to justify a decree of divorce.

While the above discussion shows the testimony forbids the granting of a decree of annulment, yet the doctrine laid down by the Master in his report is one so extremely dangerously as to prevent its adoption in Maryland, only if supported by authorities of the most

coercive nature. I, therefore, examined the authorities the Master cited, and found that:

A: Miller vs. Miller, 175 Cal. 797, turned upon the provisions of the California Code, among which is one that marriage is a personal relation, *arising out of contract*. In Maryland marriage is a status, not a contract.

B: In Anders vs. Anders, 224 Mass. 438, the woman married solely to make legitimate a child by another man.

C: In Johnson vs. Johnson, 176 Ala. 449, the husband married to keep the wife from testifying against him in a criminal prosecution.

D: In Barnes vs. Myethe, 28 Vt. 41, not only was one of the parties *feeble-minded*, but both were paupers, and the marriage was procured by the authorities of the place in which one of the parties lived, to relieve it of the duty of support. In this case there was want of consent of each party to the marriage.

E: That Barnet vs. Kimell, 35 Pa. St. 12, was an action on a bond to indemnify the obligee if he did not marry a named woman within a certain time, the marriage took place within the named time, but payment of the penalty in the bond was refused by the obligee, because, among reasons, the marriage was a fraud, in that the man never lived with the woman as his wife.

F: The rule laid down in Dickman vs. Dickman, L. R. Probate Division, 1913, page 198, was reversed in Napier vs. Napier, L. R. P. D. 1915, folio 184.

So none of these cases are of coercive authority. The policy of the Maryland law is set out in the case of Brooke vs. Brooke, 60 Md. 524, page 333, affirmed in Wimbrough vs. Wimbrough, 125 Md. 619, at page 629, in which our Court of Appeals said:

"The refusal of a man to live with his wife did not render the marriage ceremony an idle form without binding force; that it can give no countenance to the idea that the solemn rights of marriage, which it is the policy of the law and good morals to uphold, can thus be connected with a fraud."

In this last case the husband filed a bill for annulment on the ground of duress, he claiming to have been compelled to go through the marriage ceremony because of fear of instant death or grievous bodily harm at the hands of the girl's father.

The Master's report contains almost, if not nearly, all the authorities upon this question. None are coercive, those above named are typical. From their analyses, I am compelled to differ from the Master, and to hold that, under the Maryland law, "a preconceived determination at the time of the marriage not to allow sexual intercourse, persisted in after the marriage, is not a fraud that will justify the annulment of the marriage" at the instance of the injured party.

I have gone fully into the questions here presented, not only because I think it necessary to have very strong reasons to justify my overruling the Master, in whose opinion I have so much confidence, but because latterly there is a tendency to draw away from the principles governing cases involving dissolution or severance of marriage ties, and to add new causes to those heretofore recognized as grounds for annulling or dissolving marriage, and while I do not express any opinion as to the wisdom of this tendency, until changed by legislation or by some clear decision of the Court of Appeals, *nisi prius* courts should follow strictly the policy set out in the case of Fisher vs. Fisher, *supra*, "that marriage shall not be severed except for such sufficient and legal causes as the statute specifically designates."

I have signed a decree dismissing the petition for divorce and imposing costs on the husband.