STEGIENKO v. STEGIENKO.

1. MARRIAGE—ANNULMENT—MARITAL INTERCOURSE.

Where a husband enters marriage in the belief that his wife would submit to marital intercourse and the wife enters marriage with the intent of not submitting to intercourse and of not having children, he is entitled to an annulment of the marriage.

2. SAME—ANNULMENT—FRAUD—NONDISCLOSURE OF STERILITY BY REASON OF OPERATION.

Since procreation of children is one of the important ends of matrimony, if a woman, knowing herself to be barren and incapable of conceiving and bearing children by reason of an operation, does not disclose such fact to her intended husband, he, upon discovering such sterility after marriage, is entitled to annulment on ground of fraud.

3. SAME—IMPLIED ABILITY TO BEAR CHILDREN.

A representation by a woman that she is able to bear children to her husband is implied in the very nature of the marriage contract.

4. SAME—ANNULMENT—FRAUD.

Marriage may be annulled for fraud of any nature wholly subversive of the true essence of the marriage relationship.

5. SAME—ANNULMENT—EVIDENCE—FRAUD—INTENT NOT TO BEAR CHILDREN.

Under record in husband's suit for annulment of marriage warranting finding that defendant misled plaintiff into the marriage by fraudulently pretending that she desired to have children and that because of her physical condition she did not intend to have normal marital intercourse with him and intended not to bear children to him, he is entitled to decree of annulment.

Appeal from Wayne; Moynihan (Joseph), J. Submitted October 15, 1940. (Docket No. 68, Calendar No. 41,270.) Decided December 10, 1940.

Amended bill by Anthony Stegienko against Josephine Stegienko for an annulment of marriage or in the alternative a divorce. Cross bill by defendant against plaintiff for divorce for extreme cruelty. Decree dismissing bill and cross bill. Plaintiff appeals. Reversed and cause remanded for entry of decree of annulment for plaintiff.

*Sol Blumrosen,* for plaintiff.

*Art Willard* and *Louis R. Harrington,* for defendant.

McALLISTER, J. Plaintiff and defendant were married October 29, 1938. Two days later plaintiff left defendant and subsequently filed a bill for annulment, claiming that he was induced to marry defendant by means of fraudulent representations. On December 5, 1938, defendant filed her answer and cross bill, asking that a decree of divorce be granted to her. Subsequently, she filed a second answer and cross bill, asking the same relief. Plaintiff thereafter amended his bill, asking for a divorce in case the court declined to annul the marriage. On the trial the circuit court dismissed the bill and cross bill, and plaintiff appealed.

Plaintiff first met defendant in 1932 and, according to his testimony, saw her occasionally until 1938. For about two months before the marriage, he states that he "kept steady company with her." During October, 1938, plaintiff wrote defendant affectionate letters, mentioning the coming wedding and telling defendant to buy "a nice wedding cake." He gave defendant a diamond ring and a wedding ring with small diamonds, and $75 to purchase a wedding dress and other articles of adornment. After the marriage, which was performed by a justice of the

peace, they had a group of friends for a wedding supper. Plaintiff testified that before they were married he had expressed to defendant the wish to have children and that she told him "she would like to have a little girl and more children if we could afford it." It is the claim of plaintiff that, after the marriage ceremony, when they arrived home, defendant refused to have marital relations with him unless he used contraceptive devices, and that she gave as her reason the fact that she was afraid to have children, because she had previously had an operation. He stated that he told her that they could not live like that, and that her reply was, "I don't care what you do, but I won't give you a divorce now." It was after this episode that plaintiff left her and filed his bill for annulment.

· Defendant, in her first answer and cross bill, stated that "plaintiff and cross-defendant * * * courted defendant and cross-plaintiff for approximately six years, constantly urging and rushing her into marriage;" and defendant states that she told her attorney of such circumstances when he was preparing the cross bill. She thereafter changed attorneys and in her subsequent cross bill claimed to have been plaintiff's common-law wife for six years prior to 1938. On the trial she claimed that the reason plaintiff left her after the formal marriage was that she refused to have sexual relations in the unnatural way that plaintiff demanded. In support of her claim, however, that she had previously been plaintiff's common-law wife, she testified that she had carried on sexual intercourse with plaintiff during a period of six years previously. Nevertheless, she testified that the fact that she was plaintiff's common-law wife was kept a secret; that no relatives, friends, or neighbors knew about it; and that her son, who lived with her, had

no knowledge of the fact. She further testified that she supported plaintiff while he was out of work during certain years. On cross-examination, she admitted that during the periods she claimed to have been supporting plaintiff, she was applying for public relief on the ground that she was unmarried and destitute. Her claim that she had previously supported plaintiff was denied by him as well as the fact that he had intimate relations with her before their marriage in 1938.

Six weeks before their marriage, defendant wrote plaintiff a letter in which she said:

"I haven't gone with that other man, and I am not losing my head over him. *I haven't dropped our plans either, but I hope you don't think I am going to wait years for you.*

"Do you really mean that your thoughts are always with me? It's hard to believe that. * * *

"Your letter doesn't bore me only it surprised me that I should get mail from you. Please write more I like to receive mail; and if you can't come and see me, it's a pleasure to get a few words through the mail."

It further appears from court records relating to defendant's previous marriage to Joseph Swiatek that she had chronic inflammation of the pelvic organs; and after the introduction of records relating to her previous divorce, she testified that she had suffered four miscarriages during her previous marriage. Defendant's testimony is evasive and contradictory, and is so improbable and inconsistent with her actions and conduct as to be impossible of belief. We are unable to give it any credence. Although the circuit court dismissed plaintiff's bill, he said in the course of his opinion:

"While it is true the plaintiff left the defendant after only two days of married life, the defendant

counters with a claim, which is far from being supported, of an alleged common-law relationship of six years; she has not at least presented any proof supporting her contention in that respect. It seems improbable to this court that if a man had been living in a common-law relationship with this defendant as she contends for over a period of six years, that he would write the letters that he did or that he would then all of a sudden not only insist on the marriage being performed, but having a celebration over the event. The proofs do not, as I say, support the defendant's contention with respect to the common-law relationship."

Plaintiff, as appears from the evidence, was born in Poland and came to Cleveland, Ohio, when he was about 26 years old. He is without a family, his parents being dead and his sister having died during the German occupation of Poland in the first World War. It further appears that he is an industrious man, a tool maker, employed in an automotive factory, who has saved his earnings, paid his obligations, and earned the respect of his fellow workers as a good and honest man. His desire for a family, his devotion to defendant before the marriage, his generosity to her in advancing money for her wedding dress, his gifts to her, and his desire to make their wedding a happy occasion stand revealed in the record and stamp him as a man whose testimony, consistent with the probabilities and circumstances of this case, is worthy of belief.

Where a husband enters the marriage relationship in the belief that his wife would submit to marital intercourse, it is held that he is entitled to annulment where the wife enters the marriage with the intent of not submitting to intercourse and of not having children. *Miller* v. *Miller*, 132 Misc. 121 (228 N. Y. Supp. 657). Procreation of children

is one of the important ends of matrimony; and when a woman, knowing herself to be barren and incapable of conceiving and bearing children by reason of an operation, does not disclose this fact to her intended husband, he, upon discovering such sterility after marriage, is entitled to a decree of annulment on the ground of fraud. See *Turney* v. *Avery,* 92 N. J. Eq. 473 (113 Atl. 710). A representation by a woman that she is able to bear children to her husband is implied in the very nature of the marriage contract. *Baker* v. *Baker,* 13 Cal. 87. Marriage may be annulled for fraud of any nature wholly subversive of the true essence of the marriage relationship. *Yanoff* v. *Yanoff,* 237 Mich. 383.

From an examination of the record, we are of the opinion that the evidence and all of the circumstances in the case sufficiently prove that defendant misled plaintiff into the marriage by fraudulently pretending that she desired to have children; that because of her physical condition she did not intend to have normal marital intercourse with plaintiff and intended not to bear children to the plaintiff. Her entering into the marriage upon such misrepresentations and with such intentions entitled plaintiff to a decree of annulment.

The decree dismissing plaintiff's bill of complaint is vacated, with costs to plaintiff, and the cause is remanded for entry of a decree in accordance with the foregoing opinion.

BUSHNELL, C. J., and SHARPE, BOYLES, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred.