ZERK, Appellant, vs. ZERK, Respondent.

*October 2—November 8, 1950.*

For the appellant there were briefs by *Henry S. Rademacher* of Chicago, Illinois, and *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Mr. Leo E. Vaudreuil* and *Mr. Rademacher*.

For the respondent there was a brief by *Maurice M. Spracker* of Milwaukee, guardian *ad litem,* and *Maurice L. Marcus* and *Alexander H. Glick,* both of Chicago, Illinois, and oral argument by *Mr. Spracker*.

HUGHES, J. Psychologists, and others who hold themselves out to be experts in the field of domestic relations, teach that need for adjustments after marriage should be anticipated by parties to the contract. Patience is one of the virtues that should be practiced by bridegrooms and sometimes by brides as well.

The record does not disclose the ages of the parties.

Certainly if the first night was not all that the plaintiff's expectations had led him to hope for, he was not under compulsion to seek annulment of the marriage the next day. If, from day to day, during the first month, he believed that his

powers of persuasion and physical attraction might overcome defendant's determination, it cannot be said as a matter of law that he must have abandoned hope earlier, and by continuing to live with her accepted a half marriage and now has no right to seek annulment.

We therefore examine the question of whether the conduct alleged, admitted to be true for purposes of demurrer, states a cause of action.

Defendant's counsel contend that failure to have sexual relations does not go to the essence of marriage. The authorities do not bear out this contention. Even in the absence of specific agreement upon the subject prior to the marriage most parties to the relationship contemplate sexual relations as an element of "connubial bliss."

In *Anders v. Anders* (1916), 224 Mass. 438, 441, 113 N. E. 203, 204, L. R. A. 1916 E 1273, the court said:

"In the case at bar the libellee [respondent] went through the marriage ceremony with an intention never to perform any one of the duties of a wife. She went through the ceremony solely to secure a right to bear the name of a married woman and in that way to hide the shame of having had an illegitimate child, intending to leave her husband at the church door and not see him again. That plan she carried into effect. It is settled that a contract for the sale of goods is induced by fraud and for that reason voidable where the purchaser had an intention when the contract was made not to perform his promise to pay for them. If an intention not to perform his promise renders a contract for the purchase of property voidable, *a fortiori* the same result must follow in case of a contract to enter into 'the holy estate of matrimony.' See generally in this connection *Barnes v. Wyethe,* 28 Vt. 41."

In dealing with a similar subject the Michigan court said:

"Where a husband enters the marriage relationship in the belief that his wife would submit to marital intercourse, it is held that he is entitled to annulment where the wife enters the marriage with the intent of not submitting to intercourse and

of not having children. *Miller v. Miller,* 132 Misc. 121, (228 N. Y. Supp. 657). Procreation of children is one of the important ends of matrimony; and when a woman, knowing herself to be barren and incapable of conceiving and bearing children by reason of an operation, does not disclose this fact to her intended husband, he, upon discovering such sterility after marriage, is entitled to a decree of annulment on the ground of fraud. See *Turney v. Avery,* 92 N. J. Eq. 473, (113 Atl. 710). A representation by a woman that she is able to bear children to her husband is implied in the very nature of the marriage contract. *Baker v. Baker,* 13 Cal. 87. Marriage may be annulled for fraud of any nature wholly subversive of the true essence of the marriage relationship. *Yanoff v. Yanoff,* 237 Mich. 383." *Stegienko v. Stegienko* (1940), 295 Mich. 530, 534, 295 N. W. 252.

In *Winner v. Winner* (1920), 171 Wis. 413, 418, 177 N. W. 680, a marriage induced by the wife's pretense to the husband that her pregnancy was due to intercourse with him, was annulled upon proof that such pregnancy resulted from intercourse with another man. The court said:

"The marriage contract implies that the woman is in present condition to bear her husband children, at least so far as she knows. In such a case as we have she knows she cannot till the spurious issue is born. It has been held that a spouse infected before marriage with a venereal disease commits such a fraud upon the other who is not aware of it as to warrant an annulment of the marriage. *C—— v. C——,* 158 Wis. 301, 305, 148 N. W. 865. The carrying and the concealment of a spurious issue must be considered at least an equal fraud."

The ability to conceive unless coupled with the willingness to engage in activities which might lead to pregnancy is of little comfort to the husband desirous of having children.

Defendant relies upon *Wells v. Talham* (1923), 180 Wis. 654, 194 N. W. 36, where it was held that a Catholic had no grounds for annulment because the non-Catholic party to the marriage agreed before the civil ceremony to a second cere-

mony to be performed in the Catholic church, then refused to go through the second ceremony, and also failed to disclose a previous marriage and divorce. The court said (p. 663):

"Such a fraud does not go to the essence of the contract. . . . The discovery by the party deceived might bring mental distress, but a divorce does not prevent entering into a new marriage relation or the performance of all its duties."

The distinction between that case and the allegations of the complaint in the instant case is patent.

We have examined the cases cited by both litigants and find that the great weight of the authorities, as well as reason, supports the conclusion that the complaint states a cause of action in fraud which, if proven, would entitle the plaintiff to an annulment.

*By the Court.*—Order reversed.