## SAMPSON *v.* SAMPSON.

1. MARRIAGE—ANNULMENT—HOMOSEXUALITY—EVIDENCE.
   Evidence was insufficient to prove charge of homosexuality in wife's suit to annul marriage.

2. SAME—RESIDENCE OF PLAINTIFF.
   Residence of plaintiff wife in suit to annul marriage was in city of Grand Rapids as claimed by plaintiff and found by trial court under record presented.

3. SAME—ANNULMENT—VOLUNTARY COHABITATION.
   "Voluntary cohabitation," as that term is used in statute pertaining to void marriages, means with knowledge of all the essential facts relied on as the ground for annulment (CL 1948, § 552.2).

4. SAME—ANNULMENT—VOLUNTARY COHABITATION—CONDONATION.
   Bill for annulment of marriage would not be dismissed because of voluntary cohabitation, where husband was a sailor, the

REFERENCES FOR POINTS IN HEADNOTES
[5] 35 Am Jur, Marriage § 86 *et seq.*

parties lived together a total of 7½ days during the month before they separated, there was no cohabitation subsequent to the filing of the bill and plaintiff's offer of condonation was not accepted and the offer has not been repeated (CL 1948, § 552.2).

5. SAME—ANNULMENT—FRAUD—EVIDENCE.

Claim by woman who was a 58-year-old wealthy widow at time of her marriage to 28-year-old sailor, that he never intended that any real marriage relationship should exist and that his motive in entering into the marriage was to defraud plaintiff out of her property *held*, established by evidence and a sufficient basis for annulment of the marriage (CL 1948, § 552.2).

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted October 9, 1951. (Docket No. 53, Calendar No. 45,244.) Decided January 7, 1952.

Bill by Annie Sampson against Carl J. Sampson for annulment of a marriage. Decree for plaintiff. Defendant appeals. Affirmed.

*Warner, Norcross & Judd,* for plaintiff.

*Linsey, Shivel, Phelps & Vander Wal,* for defendant.

REID, J. The bill in this suit is for annulment of a marriage. Plaintiff claims she is a resident of the city of Grand Rapids, Michigan. Defendant claims that when plantiff filed her bill in the lower court, both parties were residents of Houston, Texas. The marriage was solemnized before a justice of the peace at the city of Yonkers, State of New York, on March 21, 1948. Plaintiff was then about 58 and defendant about 28 years of age. The bill was filed May 26, 1948.

Before this marriage plaintiff was a widow and she had received considerable property from her deceased husband.

Plaintiff met defendant on October 9, 1947, in Houston, Texas. He was a first mate on a tanker and had been working as a sailor for several years. He requested that plaintiff meet him in New York when his boat docked and accordingly she met him in New York on March 12, 1948.

Following their marriage on March 21, 1948, plaintiff and defendant lived together for a period of 1½ days. Approximately 1 month later they spent 6 days together in Houston, Texas. These 2 periods, totaling 7½ days, comprise the entire time during which the parties lived together.

On March 22, 1948, the next day after the marriage, defendant told plaintiff he had a note to meet, did not have any money, and needed $500. She gave him a check for $500, and thereafter she gave him $50 to $100 each week until they separated. While they lived together he contributed nothing to the payment of their traveling and other expenses. On April 21, 1948, the defendant advised the plaintiff that he had married her solely for her money.

The parties separated on April 22, 1948, and have not since lived together. On April 24th, defendant returned to the place where they had been staying to pick up some clothes he had left.

Plaintiff testified she discovered that the defendant is homosexual and that he fraudulently and deliberately concealed this fact from her when she consented to marry him and that she did not discover the fact until after she was married to him, and that plaintiff has not cohabited with defendant subsequent to such discovery. We consider, however, that the testimony suggests rather than proves the charge of homosexuality.

Plaintiff further claims that she was tricked and deceived into the marriage and that the marriage was never intended by defendant to be a bona fide marriage and that defendant persuaded her to marry

him solely because defendant desired to defraud her out of some or all of her property.

In September, 1948, after a default decree of annulment had been entered against the defendant in the superior court of Grand Rapids, the defendant filed a bill for divorce against the plaintiff in Texas, which bill is still pending. The defendant claims in his bill of divorce there filed a $\frac{1}{2}$ interest in all the property and business interests of the plaintiff although he now admits he in no way participated in the accumulation of plaintiff's property nor contributed to the plaintiff's support.

On January 27, 1950, the court granted defendant's motion to set aside the defendant's default and granted a hearing on the merits and for that purpose set aside the original decree of annulment.

Plaintiff had a residence in the city of Grand Rapids which she sold. She purchased a dwelling house in Houston, Texas. She was financially able to maintain a house in Houston, Texas and also one in Grand Rapids. Plaintiff claims her acquiring of the dwelling in Houston, Texas, was for the purpose of a winter-time residence in that city and for vacation purposes rather than an all the year round residence and plaintiff further claims that she at no time relinquished Grand Rapids as the place of her residence. Plaintiff testified that at the time she sold her dwelling house in Grand Rapids, she had some lots just outside of Grand Rapids and intended to build on her lots a house smaller than the house she sold and more suitable for her as a place of residence.

The trial judge among other things found as follows:

"The question of the plaintiff's residence presents no difficulty of decision. At the time of her filing of the bill of complaint she declared herself to be a resident of the city of Grand Rapids. She owned a home here in which she had resided for a number of years.

Her financial interests and property holdings were here. She had acquired them in the city of Grand Rapids. Her automobile was registered in Michigan. She held a Michigan operator's license, and she voted here. * * * Plaintiff owns real estate adjacent to the city in the nature of building lots, and she testified that as soon as possible she intended to erect a smaller home upon these properties for herself and in accord with her needs."

The trial court further found that the residence of plaintiff was in the city of Grand Rapids, as claimed by plaintiff, in which finding we concur.

Defendant claims the proof offered and received was not a sufficient showing of grounds for annulment of marriage.

Plaintiff claims that defendant's purpose in entering into the marriage to begin with and in pursuing the course that he did pursue, was for the purpose of acquiring an interest under the law of Texas as to property held by plaintiff that she had before marriage, and that the defendant contributed nothing to her property but on the contrary, persuaded her to turn over to him considerable sums of money.

The statute of our State, CL 1948, § 552.2 (Stat Ann § 25.82), provides (so far as applicable to the instant case):

"In case of a marriage solemnized when * * * the consent of one of the parties was obtained by force or fraud, and there shall have been no subsequent voluntary cohabitation of the parties, the marriage shall be deemed void, without any decree of divorce or other legal process."

Voluntary cohabitation means, with knowledge of all the essential facts relied on as the ground for annulment. See *Sweeney v. Sweeney,* 96 Vt 196 (118 A 882, 26 ALR 1066), and 26 ALR 1068. See, also, *Stegienko v. Stegienko,* 295 Mich 530, 535.

Defendant claims condonation and relies upon letters written him after the filing of the bill in effect offering to take him back if he would consent to be a real husband. The offer was not accepted, there was no cohabitation subsequent to the filing of the bill and plaintiff's suit is not to be dismissed on that account.

Surely plaintiff was far better informed of defendant's intent to treat the marriage as a nullity after her efforts to have him come back to her proved futile. There has been no "condonation" nor cohabitation after his entire refusal to return to her became known to her.

The finding of the trial judge was that the grounds claimed by plaintiff were sufficiently established in the evidence. We agree with the trial judge in that finding. Very evidently the defendant never intended that any real marriage relationship should exist and his motive in entering into the marriage was to defraud plaintiff out of her property. The decree appealed from is affirmed. Costs to plaintiff.

DETHMERS, BUTZEL, CARR, SHARPE, and BOYLES, JJ., concurred with REID, J.

NORTH, C. J., and BUSHNELL, J., concurred in the result.