Opinion issued June 11, 2009










 




In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00149-CV






ELAINE LEAX, Appellant


V.


ROBERT W. LEAX, Appellee






On Appeal from the 246th District Court

Harris County, Texas

Trial Court Cause No. 2007-15216






O P I N I O N

 Appellant, Elaine Leax ("Elaine"), appeals the trial court's decree annulling her
marriage to appellee, Robert Leax ("Robert"). In three issues, Elaine contends that
(1) the evidence was legally and factually insufficient to support the trial court's
decree granting an annulment; (2) the trial court failed to divide the parties' estate in
a just and right manner; and (3) the trial court erred in admitting any evidence
regarding Robert's separate property.

 We affirm.

Background

 Elaine and Robert were married on July 1, 2001 and moved into Robert's
home, located on Shalford Drive in Spring, Texas. They separated on March 12,
2007, when Elaine moved out while Robert was away on a cruise with his youngest
daughter. Robert and Elaine did not have any children together. Elaine took the
majority of the household items from their home, and she removed approximately
$33,000.00 from a shared checking account, leaving approximately $1,700.00 in the
account.

 Elaine then filed a petition for divorce. In her petition, Elaine alleged that the
marriage had become insupportable because of discord or conflict of personalities
between herself and Robert and that Robert was guilty of cruel treatment toward her. 
She asked for a disproportionate division of the property based on the alleged cruel
treatment, her disability, her loss of the benefits of the marriage, and Robert's
superior earning capacity, education, and separate estate. Robert denied Elaine's
allegation of cruelty.

 In response to some interrogatories, Elaine disclosed the existence of eight
previous marriages. This prompted Robert to file his "Second Amended
Counterpetition for Annulment and Counterpetition for Divorce," asking for
annulment on the basis of fraud and seeking a disproportionate share of the marital
estate due to Elaine's fraud and fault in the break-up in the marriage, among other
factors.

 On September 5, 2007, the trial court signed its "Order Compelling Discovery
Responses," requiring Robert to respond fully to Elaine's requests for production or
to pay $500 in attorney's fees if he failed to comply. Robert later argued that he was
not given notice of the hearing at which the order compelling discovery was entered. 
Robert further argued that he had already produced any required documents to
Elaine's previous attorney.

 At a bench trial on December 3, 2007, the trial court heard testimony from both
Robert and Elaine regarding whether the trial court should grant an annulment and
regarding proper division of the parties' estate. Elaine testified that Robert made
threats against her and called her names in 2006 and 2007 and that she moved out
while he was on the cruise because she wanted to avoid being hurt or killed. Elaine
also testified about specific property that she took from the house when she left that
was acquired during the marriage, including a disputed china cabinet. Elaine testified
that she believed she was entitled to a disproportionate share of their community
estate because of the alleged cruel treatment and because of her disability. She
testified that Robert made $130,000.00 last year, while she received monthly
disability income of only $1,600.00 each month.

 Robert testified that he had been married to his previous wife for 25 years until
she died of cancer. He met Elaine, fell in love with her, and proposed to her. He
testified that he knew when they were dating that she had been married and divorced
twice before. He also testified that, just prior to their marriage, she admitted to a third
previous marriage when it became obvious that Robert was likely to find out through
other means. Elaine told Robert that she did not tell him about the third marriage
because she knew Robert would not like the fact that she had had another marriage. 
Robert testified that he specifically asked Elaine whether there were any other
marriages in her past, and she told him that there were not. Robert testified that he
would not have married Elaine if he had known that she had previously been married
eight times. Elaine responded by testifying that she had revealed all of her prior
marriages to Robert before they were married.

 Regarding the circumstances of their separation, Robert testified that he won
a cruise through his employer and that he and Elaine had planned to go on the cruise
together. Sometime before the cruise occurred, Elaine told Robert that she did not
intend to go on the cruise because she was having anxiety attacks at the thought of
being on the open seas. Robert decided to cancel the trip because Elaine did not want
to go, but Elaine suggested that he go with his youngest daughter. Robert left on the
cruise thinking he was in a happy marriage, and he spoke with Elaine by phone
several times while he was gone on the cruise. Elaine was supposed to pick Robert
up from the airport. However, she told Robert over the phone that she was ill and
could not drive to get him, so she arranged to have a car left at the airport for him. 
She asked Robert to call her when he was 30 minutes away from home. Robert
testified that he thought Elaine might have been planning a surprise party for him for
his sixtieth birthday, but when he got home he discovered that Elaine had moved out
of the house and had taken the majority of their household items and furniture with
her, including a china cabinet that they had purchased on their first anniversary and
a flat screen television that Robert had won at work.

 Elaine also removed $33,066.72 from their joint bank account, leaving
$1,700.00 in the account. The majority of this money was from a large bonus Robert
had received a few days after he left on the cruise. Elaine put the money into an
account in her name. Robert testified that he had no idea why Elaine was now
claiming that he had treated her cruelly because he had never threatened her or called
her any names. Robert also testified regarding a pending personal injury suit that
Elaine was pursuing for a car accident in which she had been rear-ended in 2004. 
Robert testified that he believed she was seeking damages in excess of $100,000 and
that they had paid over $30,000 in medical expenses related to her injuries.

 The trial court issued its decree declaring the marriage void and granting the
annulment on December 19, 2007. The trial court's decree also rendered judgment
apportioning the parties' estate. Robert was awarded the home on Shalford Drive, all
"retirement accounts, 401(k)'s, stocks, bonds, and other investment accounts" in his
name, 100% of all accounts in his own name, 50% of any joint accounts, all personal
property in his possession plus the flat screen television in Elaine's possession, and
a 1998 Honda Civic. Elaine was awarded all of the personal property that was in her
possession except for the flat screen television, all real estate in her name, all
"retirement accounts, 401(k)'s, stock and bonds, and other investment accounts" in
her name, 100% of all accounts in her own name, 50% of any joint accounts, the
china cabinet given to her by Robert, and a 1999 Honda CRV.

 Elaine requested findings of fact and conclusions of law, which the trial court
filed on January 16, 2007. The trial court found that Elaine misled Robert concerning
the number of her previous marriages and "intentionally withheld from [him] the
existence of five other marriages." The trial court further found that Elaine's
"misstatements . . . were both material and were made for the purpose of inducing
[Robert] to rely upon them in entering into the purported marriage," that Robert did
rely on Elaine's representations regarding the number of her previous marriages when
he entered the marriage with Elaine, and that his reliance was reasonable and resulted
in harm to him. The trial court found that Elaine induced Robert to take a cruise
without her, and, while Robert was gone, she removed "most of the household
furnishings from the parties' residence and withdrew $33,000.00 from the parties'
financial account." Finally, the trial court found that Robert and Elaine did not
voluntarily cohabitate after Robert learned of the existence of the five additional,
undisclosed marriages and divorces. The trial court then concluded that Robert was
entitled to an annulment of the marriage on the basis of fraud pursuant to section
6.107 of the Texas Family Code.

 Regarding the division of property, the trial court found that both Robert and
Elaine "acquired, prior to the purported marriage, various financial, retirement, and
insurance accounts." The trial court found: 

Except as specifically set forth below, the Court finds that an equitable
division of the property acquired during the purported marriage should
be that each party be awarded the automobile standing in such party's
name [a 1999 Honda CRV for Elaine and a 1998 Honda Civic for
Robert], and all other property held in their respective names, including,
but not limited to: real estate, personal property, retirement accounts,
401Ks, stocks and bonds, and investment accounts. Each party should
be awarded the property standing in their [sic] name as of the date of the
purported marriage.


The trial court's findings of fact also stated:

An equitable division of any joint accounts should be fifty percent to
each party. Individual accounts should be awarded to the party in whose
name the account stands.


Robert Leax should be awarded fifty percent of the $33,000.00 removed
from the account by Elaine Leax on the date of separation.


The Court finds that [Robert] gave a certain disputed china cabinet to
[Elaine] during the purported marriage as a wedding gift and that it
should be awarded to [Elaine].


The Court finds that during the purported marriage, [Robert] won a flat
screen television currently in the possession of [Elaine] and that such
television should be awarded to [Robert].


All other requests for relief by the parties should be denied.

Annulment

 In her first issue, Elaine argues that the trial court erred in granting an
annulment instead of a divorce because the evidence was legally and factually
insufficient to support granting an annulment under the Texas Family Code.

A. Standard of Review

 We review conclusions of law de novo. BMC Software Belgium, N.V. v.
Marchand, 83 S.W.3d 789, 794 (Tex. 2002). Findings of fact in a case tried to the
court have the same force and dignity as a jury's verdict upon jury questions. City of
Clute v. City of Lake Jackson, 559 S.W.2d 391, 395 (Tex. Civ. App.--Houston [14th
Dist.] 1977, writ ref'd n.r.e.). The trial court's findings of fact are not conclusive
when, as here, we have a complete reporter's record. Middleton v. Kawasaki Steel
Corp., 687 S.W.2d 42, 44 (Tex. App.--Houston [14th Dist.]), writ ref'd n.r.e., 699
S.W.2d 199 (Tex. 1985). The trial court's findings of fact are reviewable for legal
and factual sufficiency of the evidence using the same standards that are applied in
reviewing the sufficiency of the evidence underlying jury findings. Vannerson v.
Vannerson, 857 S.W.2d 659, 667 (Tex. App.--Houston [1st Dist.] 1993, writ denied).

 When, as here, an appellant attacks the legal sufficiency of an adverse finding
on an issue for which she did not have the burden of proof, she must demonstrate that
there is no evidence to support the adverse finding. Croucher v. Croucher, 660
S.W.2d 55, 58 (Tex. 1983). In a legal sufficiency, or "no-evidence," review, we
determine whether the evidence would enable reasonable and fair-minded people to
reach the verdict under review. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.
2005). In conducting this review, we credit favorable evidence if reasonable jurors
could and disregard contrary evidence unless reasonable jurors could not. Id. We
consider the evidence in the light most favorable to the finding under review and
indulge every reasonable inference that would support it. Id. at 822. We must sustain
a no-evidence contention only if (1) the record reveals a complete absence of
evidence of a vital fact, (2) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact, (3) the evidence
offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence
establishes conclusively the opposite of the vital fact. Id. at 810; Merrell Dow
Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).

 In reviewing a challenge to the factual sufficiency of the evidence, we must
consider and weigh all of the evidence and should set aside the judgment only if it is
so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Arias v. Brookstone, L.P., 265 S.W.3d 459, 468 (Tex. App.--Houston [1st
Dist.] 2007, pet. denied) (citing Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986)).

 The fact finder is the sole judge of witnesses' credibility; it may choose to
believe one witness over another, and a reviewing court cannot impose its own
opinion to the contrary. Wilson, 168 S.W.3d at 819; Arias, 265 S.W.3d at 468. 
Because it is the fact finder's province to resolve conflicting evidence, we must
assume that the fact finder resolved all evidentiary conflicts in accordance with its
decision if a reasonable human being could have done so. Wilson, 168 S.W.3d at
819; Arias, 265 S.W.3d at 468. An appellate court may not impose its own opinion
to the contrary of the fact finder's implicit credibility determinations. Wilson, 168
S.W.3d at 819; Arias, 265 S.W.3d at 468.

B. Analysis

 The trial court found that Elaine misled Robert concerning the number of her
previous marriages and intentionally withheld from him the existence of five previous
marriages. The trial court also found that Elaine's misrepresentation was material and
was made for the purpose of inducing Robert to enter into the marriage, that Robert
did rely on Elaine's representations regarding the number of her previous marriages
when he entered the marriage with Elaine, and that his reliance was reasonable and
resulted in harm to him. The trial court concluded that Robert was entitled to an
annulment of the marriage on the basis of fraud pursuant to section 6.107 of the Texas
Family Code.

 Section 6.107 provides:

The court may grant an annulment of a marriage to a party to the
marriage if:


 (1) the other party used fraud, duress, or force to induce the
petitioner to enter into the marriage; and


 (2) the petitioner has not voluntarily cohabited with the other
party since learning of the fraud or since being released
from the duress or force.


Tex. Fam. Code Ann. § 6.107 (Vernon 2006). We were unable find any cases from
Texas courts specifically articulating the proof necessary to warrant annulling a
marriage on the basis of fraud. (1)

 Fraudulent inducement is a type of fraud. Tex. S. Univ. v. State St. Bank &
Trust Co., 212 S.W.3d 893, 914 (Tex. App.--Houston [1st Dist.] 2007, pet. denied). 
Fraudulent inducement is established by proving that a false material representation
was made that (1) was known to be false when it was made, (2) was intended to be
acted upon, (3) was relied upon, and (4) caused injury. Id. American courts generally
have held that marriages can be annulled on the basis of fraud only if the fraud
concerns an issue essential to the marriage. See, e.g., Elliott v. James, 977 P.2d 727,
730 (Alaska 1999) ("Decisions from other jurisdictions generally hold that marriages
are presumed valid and can be annulled on the basis of fraud only if the fraud
concerns an issue essential to the marriage."); Wolfe v. Wolfe, 389 N.E.2d 1143, 1144
(Ill. 1979) ("[A] marriage contract can be voided only if the nature of the fraud itself
affects the essentials of the marriage."); Guggenmos v. Guggenmos, 359 N.W.2d 87,
91 (Neb. 1984) ("While [exaggerations of accomplishments, character, and
circumstances] constitute a species of fraud, they do not afford a basis for destruction
of the marriage."); Attor v. Attor, 894 A.2d 83, 87-88 (N.J. Super. Ct. App. Div.
2006) ("The New Jersey Courts have held that where a marriage has been
consummated, the fraud alleged must be of an extreme nature, that goes to one of the
essentials of marriage."); Stegienko v. Stegienko, 295 N.W. 252, 254 (Mich. 1940)
(noting fraud must be "of a nature wholly subversive of the true essence of the
marriage relationship" to support annulment of marriage).

 Several courts have held that the nondisclosure of a prior marriage and divorce
does not qualify as an extreme enough fraud to annul a marriage. See Attor, 894 A.2d
at 88 (citing Gerard v. Distefano, 202 A.2d 220 (N.J. Super. Ct. App. Div. 1964)
("The nondisclosure of a prior marriage and divorce is not such a fraud, for it in no
way impedes the carrying out of the marital obligations and does not go to the
fundamentals of the relationship.")); Hess v. Pettigrew, 247 N.W.90, 95 (Mich. 1933)
(holding concealment of prior marriage is generally not fraud justifying annulment). 
However, at least one jurisdiction has held that the wife's concealment of five of her
previous seven marriages on the application for a marriage license was sufficient
fraud to serve as a basis to annul the marriage. Mayo v. Mayo, 617 S.E.2d 672,
674-75 (N.C. Ct. App. 2005).

 Here, Robert testified that while he and Elaine were dating she told him that
she had been married twice. Just before their marriage, Elaine was compelled to
reveal a third previous marriage to Robert. At this time, Robert asked Elaine directly
whether she had had any other prior marriages, and she told him that she had not. 
Robert testified that if he had known Elaine had actually been married eight times
previously, he would not have married her. He testified that he did not discover the
other five marriages until after Elaine had moved out of the house, taken most of the
household furnishings, withdrawn $33,000 from their financial account, and filed for
divorce while he was away on a cruise.

 Elaine testified that Robert knew about all of her previous marriages at the time
that they got married. She testified that she waited until he left on the cruise to move
out of the house and file for divorce because she was afraid that he might hurt her. 
However, there was no record of any protective orders or incident reports of domestic
violence presented at trial, and Elaine had made similar allegations in two of her
previous eight divorce proceedings.

 The trial court, as the fact finder, was the sole judge of the credibility of these
two witnesses. See Wilson, 168 S.W.3d at 819; Arias, 265 S.W.3d at 468. The
findings of fact clearly show that the trial court found Robert's testimony to be more
credible than Elaine's. See id. In light of Robert's testimony at trial, we conclude
that there was legally sufficient evidence to support the trial court's finding of
Elaine's fraud. See Wilson, 168 S.W.3d at 810 (discussing legally sufficient
evidence); State Street Bank, 212 S.W.3d at 914 (discussing elements of fraudulent
inducement). Therefore the evidence was legally sufficient to support the trial court's
annulment of the marriage based on fraud.

 Furthermore, in light of all the evidence, we cannot conclude that the trial
court's findings are so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. See Arias, 265 S.W.3d at 468. Robert testified that he was
unaware of five of Elaine's eight previous marriages. This is certainly more
significant than a spouse concealing only one previous marriage and divorce and
clearly goes to the essentials of the marriage. See Mayo, 617 S.E.2d at 674-75. The
only contrary evidence was Elaine's own testimony that Robert knew of all of her
previous marriages at the time that they married. This is not enough for us to
conclude that the trial court's findings were against the great weight of the evidence.

 Elaine argues that section 6.107 should not have applied to her case because 
only section 6.109 of the Texas Family Code allows a trial court to annul a marriage
because of a concealed marriage, and the terms of section 6.109 do not allow an
annulment in this case. Section 6.109 allows a court to annul a marriage when one
spouse concealed a prior divorce that occurred within the 30-day period preceding the
date of the marriage ceremony. See Tex. Fam. Code Ann. § 6.109 (Vernon 2006). 
This statute is clearly not applicable to Robert and Elaine's situation, as Robert's
petition for annulment was based on the concealment of five previous marriages that
occurred over a number of years. Elaine argues that "'[c]oncealed divorces' that do
not fall within the 30-day window of [section 6.109] cannot constitute grounds for
annulment merely by re-categorizing them as 'fraud' under section 6.107." However,
Robert did not "merely re-categorize" Elaine's prior marriages and divorces. As we
have already discussed, the extreme number of Elaine's concealed previous marriages
was sufficient to justify annulment based on Elaine's use of fraud "to induce [Robert]
to enter into the marriage" under section 6.107 of the Family Code.

 We overrule Elaine's first issue.

Division of Assets

 In her second and third issues, Elaine challenges the trial court's division of the
marital estate.

A. Admissibility of Robert's Testimony

 In her third issue, Elaine argues that the trial court erred in admitting any
evidence regarding Robert's separate property because Robert failed to comply with
a previous discovery order, failed to file responses to requests for disclosure, and
failed to file an inventory, as required under the local rules of court. At trial, Elaine
objected to Robert's attempts to testify regarding his separate property on the grounds
that Robert failed to comply with a court order to produce the information prior to
trial. Robert responded that he had already produced the requested information
several months earlier and that he was not given notice of the hearing at which the
trial court entered its order. The following exchange took place:

[trial court]: Sustain that objection based upon my order to
produce separate property. . . .


[Robert's counsel]: Well, Your Honor, that order was rendered
without notice to us.


[trial court]: I have no idea. Move along.


[Robert's counsel]: [to Robert] When did you purchase your
house on Shalford?


[Elaine's counsel]: Judge, I'm going to object. He's trying to get
into evidence of separate property here.


[trial court]: Overruled.


The trial court clarified that it was "ruling on documents as opposed to live
testimony" and that it would allow Robert to testify but would not admit into
evidence the documents supporting the testimony.

 Local Rule 4.2 of the Harris County Family Trial Division provides that 

A party's final Inventory, Financial Information Statement and financial
information required under the Tex. Fam. Code . . . and a proposed
division of property shall be exchanged no later than ten (10) days
before trial, and shall be filed before the commencement of trial. . . .
This rule providing for the exchange of information shall constitute a
discovery request under the T[exas] R[ules of] C[ivil] P[rocedure], and
failure to comply with this rule may be grounds for sanctions.


Harris County Fam. Trial Div. Loc. R. 4.2.

 A trial court is authorized to sanction a party for failure to comply with an
order or discovery request. Tex. R. Civ. P. 215.2. Sanctions can include

an order charging all or any portion of the expenses of discovery or
taxable court costs or both against the disobedient party or the attorney
advising him; [or]


. . . .


an order refusing to allow the disobedient party to support or oppose
designated claims or defenses, or prohibiting him from introducing
designated matters in evidence.


. . . .


In lieu of any of the foregoing orders or in addition thereto, the court
shall require the party failing to obey the order or the attorney advising
him, or both, to pay, at such time as ordered by the court, the reasonable
expenses, including attorney fees, caused by the failure. . . .


Tex. R. Civ. P. 215.2(b)(2), (4), (8).

 Discovery sanctions imposed by a trial court are within that court's discretion,
and a trial court's decision regarding discovery sanctions will be set aside only if the
court clearly abused its discretion. United Bus. Mach., Inc. v. Southwestern Bell
Media, Inc., 817 S.W.2d 120, 122 (Tex. App.--Houston [1st Dist.] 1991, no writ). 
Likewise, the decision to admit or exclude evidence is generally within the trial
court's discretion. In re J.P.B., 180 S.W.3d 570, 575 (Tex. 2005). To establish a
clear abuse of discretion, it must be shown that the trial court's action was arbitrary
or unreasonable in light of all the circumstances of the case. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985). The trial court may consider
everything that has occurred during the history of the litigation when determining
how to sanction a party. Berry-Parks Rental Equip. Co. v. Sinsheimer, 842 S.W.2d
754, 757 (Tex. App.--Houston [1st Dist.] 1992, no writ); see also Downer, 701
S.W.2d at 241.

 Here, Elaine argues that "no testimony regarding [Robert's] separate property
should have been permitted as a matter of law," and she cites Texas Rule of Civil
Procedure 215.2 and Local Rule 4.2 of the Harris County Family Trial Division. 
However, neither of these rules requires the trial court to exclude testimony on a topic
that has been the subject of a discovery order, and Robert argued at trial that the
documents had already been produced and that he did not receive notice of the
hearing at which the trial court issued the discovery order. We cannot conclude that
the trial court abused its discretion by allowing Robert to testify regarding his
separate property. See United Bus. Mach., 817 S.W.2d at 122; In re J.P.B., 180
S.W.3d at 575; see also Holloway v. Holloway, 671 S.W.2d 51, 56 (Tex.
App.--Dallas 1983, writ dism'd) (stating that witness may testify concerning source
of funds in account without producing records).

 We overrule Elaine's third issue.

B. Just and Right Division of the Parties' Estate

 In her second issue, Elaine argues that the trial court erred by failing to divide
the parties' estate in a just and right manner. As part of this issue, Elaine argues that
the trial court failed to divide some of the community assets properly and incorrectly
awarded them to Robert as his separate property. She specifically argues that two
retirement accounts in Robert's name were listed on her inventory as community
assets, that "the only competent evidence adduced at trial was that all of the parties'
property was community since the community property presumption could not have
'clearly and convincingly' been rebutted by [Robert] but for evidence that should
have been excluded," and that the trial court erred because these accounts were not
divided and were awarded to Robert as his personal property. Elaine argues that, as
a result of this error, the trial court unjustly awarded Robert "95%" of the estate,
which she argues was "a gross abuse of discretion" because she is a disabled woman
earning less that $20,000.00 annually and living in a trailer, while Robert earns
$130,000.00 annually. (2)

 In its "Findings of Fact--Separate and Ostensible Community Property," the
trial court found that both Robert and Elaine "acquired, prior to the purported
marriage, various financial, retirement, and insurance accounts." The trial court held, 

Except as specifically set forth below, the Court finds that an equitable
division of the property acquired during the purported marriage should
be that each party be awarded the automobile standing in such party's
name [a 1999 Honda CRV for Elaine and a 1998 Honda Civic for
Robert], and all other property held in their respective names, including,
but not limited to: real estate, personal property, retirement accounts,
401Ks, stocks and bonds, and investment accounts. Each party should
be awarded the property standing in their [sic] name as of the date of the
purported marriage.


 Property owned or claimed by a spouse before marriage shall be that spouse's
separate property. Tex. Const. art. XVI § 15; Tex. Fam. Code Ann. § 3.001(1)
(Vernon 2006); Love v. Bailey-Love, 217 S.W.3d 33, 35 (Tex. App.--Houston [1st
Dist.] 2006, no pet.). "A court may not decree that separate property of one spouse
becomes the separate property of the other spouse because 'the nature of separate
property is determined by the Texas Constitution, rather than by what is just and
right.'" Love, 217 S.W.3d at 35 (quoting Eggemeyer v. Eggemeyer, 554 S.W.2d 137,
140 (Tex. 1977)). Generally, whether property is separate or community property is
determined by its character at inception. McClary v. Thompson, 65 S.W.3d 829, 834
(Tex. App.--Fort Worth 2002, pet. denied). However, contributions with earned
income to 401(k)'s and retirement plans during marriage are community property. See
id. at 834-35 & n.2 (discussing methods for determining community portion of
defined contribution plans and defined benefit plans).

 In a decree of divorce or annulment, the trial court is required to "order a
division of the estate of the parties in a manner that the court deems just and right,
having due regard for the rights of each party and any children of the marriage." Tex.
Fam. Code Ann. § 7.001 (Vernon 2006); Murff v. Murff, 615 S.W.2d 696, 698-99
(Tex. 1981). The trial court has broad discretion in making a "just and right" division
of the community estate, and its discretion will not be disturbed on appeal unless a
clear abuse of discretion is shown. McElwee v. McElwee, 911 S.W.2d 182, 189 (Tex.
App.--Houston [1st Dist.] 1995, writ denied). A trial court may consider many
factors when exercising its broad discretion to divide marital property, and it is
presumed it exercised its discretion properly. Murff, 615 S.W.2d at 699. Such factors
include the nature of the marital property, the relative earning capacity and business
experience of the spouses; their relative financial condition and obligations; their
education; the size of separate estates; the age, health, and physical conditions of the
parties; fault in breaking up the marriage, the benefit the innocent spouse would have
received had the marriage continued; and the probable need for future support. See
id.; Smith v. Smith, 836 S.W.2d 688, 692-93 (Tex. App.--Houston [1st Dist.] 1992,
no writ). 

 When the circumstances demonstrate a reasonable basis for it, a trial court may
order an unequal division of community property. See Murff, 615 S.W.2d at 698-99
& n.1; Hailey v. Hailey, 176 S.W.3d 374, 380 (Tex. App.--Houston [1st Dist.] 2004,
no pet.); see also Nowzaradan v. Nowzaradan, No. 01-05-00094-CV, 2007 WL
441709, at *6 (Tex. App.--Houston [1st Dist.] Feb. 8, 2007, no pet.) (not designated
for publication). The test of whether the trial court abused its discretion is whether
it acted arbitrarily or unreasonably and without reference to any guiding principles
in dividing the estate. Downer, 701 S.W.2d at 241-42; Hailey, 176 S.W.3d at 380. 
A reviewing court may not reverse a trial court's judgment on property division
unless the trial court has clearly abused its discretion or has made an inequitable
division. Smith, 836 S.W.2d at 692.

 Here, Elaine argues that the entirety of Robert's two retirement accounts should
be considered community property because the only "competent evidence" introduced
at trial indicated that the retirement accounts were community property. We have
already held that Robert's testimony regarding his separate property was properly
permitted by the trial court. His testimony and the financial documents submitted by
Elaine establish that Robert owned those accounts at least as early as 1997, several
years prior to his marriage to Elaine.

 The trial court did not enter any specific findings of fact regarding what
portion, if any, of either Elaine's or Robert's retirement accounts was community
property--it simply awarded each party his or her own accounts, including any
amounts that could be considered community property. Elaine has not complained
that the trial court's findings of fact are lacking in specificity or asked that the trial
court be required to issue a finding of fact establishing the exact portion of these
accounts that constituted community property. Therefore, we must determine
whether the trial court abused its discretion in dividing the estate, including its
finding that awarding each party the entirety of his or her own retirement accounts
resulted in a "just and right" division of the estate.

 Both Robert and Elaine sought a disproportionate share of the martial estate. 
Elaine argued that she was entitled to a disproportionate share of the parties' estate
because of the alleged cruelty, because of her disability, and because of the
disproportion in the parties' earning potential. Robert argued that he was entitled to
a disproportionate share of the parties' estate because of the fraud committed by
Elaine and her fault in the termination of their marriage.

 The record demonstrates, however, that the trial court's disposition of the
parties' estate was not nearly as unequal as Elaine suggests. Each party was awarded
the car that was in his or her possession. Elaine was able to keep all of the items that
she removed from the house, including the disputed antique china cabinet, and she
was able to keep half of the money that was in their joint account at the time that they
separated. She was required to return to Robert the flat screen television that he won
through his job and the other half of the money that she removed from their joint
checking account. Both parties were awarded in their entirety the investments,
retirement accounts, and real property that they held prior to the marriage. There is
no evidence that any of this property was part of the community estate.

 To the extent that the trial court's disposition of the parties' estate did favor
Robert, the trial court acted within its discretion. See Murff, 615 S.W.2d at 698-99
& n.1; Hailey, 176 S.W.3d at 380. Although the record does support Elaine's
argument that she has a lower potential for future earning than Robert due to her
disability, the trial court was also entitled to consider Elaine's fraud at the time of her
marriage to Robert and her fault in ending the marriage. The trial court also could
have considered the evidence that Elaine had a separate estate worth more than
$200,000.00 at the time that she separated from Robert and the nature of the property
that each party brought into this relatively short-lived marriage. (3) See Murff, 615
S.W.2d at 699; Smith, 836 S.W.2d at 692-93. We cannot conclude that the trial court
acted arbitrarily or unreasonably and without reference to any guiding principles in
dividing the estate. See Downer, 701 S.W.2d at 241-42; Hailey, 176 S.W.3d at 380. 
Therefore, we hold that the trial court did not abuse its discretion. Smith, 836 S.W.2d
at 692 (holding that reviewing court may not reverse trial court's judgment on
property division unless trial court has clearly abused its discretion or has made
inequitable division). (4)

 We overrule Elaine's second issue.







Conclusion

 We affirm the judgment of the trial court.




 Evelyn V. Keyes

 Justice


Panel consists of Justices Keyes, Hanks, and Bland.
1. There are two Texas cases analyzing claims for annulment based on fraud. See
McLarty v. McLarty, 433 S.W.2d 722 (Tex. Civ. App.--Eastland 1968) (holding
concealment of wife's pregnancy by another man from minor husband's father did not
constitute grounds for annulment); McCullough v. McCullough, 69 Tex. 682, 7 S.W.
593 (1888) (holding husband could not have marriage annulled because wife was
pregnant by him at time of marriage).
2. The trial court's findings of fact did not include findings that characterized and valued
each asset or liability on which disputed evidence was presented at the bench trial. 
See Tex. Family Code Ann. § 6.711 (Vernon 2006) (requiring, on request of party,
findings of fact and conclusions of law concerning "the characterization of each
party's assets, liabilities, claims, and offsets on which disputed evidence has been
presented" and "the value or amount of the community estate's assets, liabilities,
claims, and offsets on which disputed evidence has been presented"); Limbaugh v.
Limbaugh, 71 S.W.3d 1, 7 & n.2 (Tex. App.--Waco 2002, no pet.) (holding that trial
court must make findings of fact on all material factual issues that involve ultimate
issues in divorce and must make findings that characterize and value each asset or
liability on which disputed evidence was presented). However, Elaine does not
complain about the adequacy of the trial court's findings of fact. Therefore, she has
waived this issue. See Tex. R. App. P. 38.1(h).
3. According to her own Inventory, Elaine's separate property included a lot in Conroe,
Texas valued at $25,210.00, an investment account with Stockcross Financial
Services, Inc. with a balance of $151,050.00, and a retirement account with a balance
of $45,183.17.
4. Elaine argues that comments made by the trial court during the bench trial show that
it did not consider dividing property in a just and right manner. However, the appeal
is governed by the findings of fact and conclusions of law filed by the trial court. See
Tex. R. Civ. P. 299 ("When findings of fact are filed by the trial court they shall form
the basis of the judgment upon all grounds of recovery and of defense embraced
therein. The judgment may not be supported on appeal by a presumed finding upon
any ground of recovery or defense, no element of which has been included in the
findings of fact. . . ."); In re W.E.R., 669 S.W.2d 716, 717 (Tex. 1984) ("[T]he judgment
of the trial court must be affirmed if it can be upheld on any legal theory that finds
support in the evidence."). We will not consider passing comments made from the
bench in determining whether the trial court abused its discretion in dividing the
parties' estate. Rutledge v. Staner, 9 S.W.3d 469, 470 (Tex. App.--Tyler 1999, pet.
denied) ("It is well-settled that an appellate court cannot construe comments the trial
judge may have made at the conclusion of the bench trial as findings of fact and
conclusions of law.") (citing In re W.E.R., 669 S.W.2d at 716)).